NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| JUSTIN C., ) | |
| ) | Supreme Court No. S-15667 |
| Appellant, ) | |
| ) | Superior Court Nos. 3PA-12-00036/37 CN |
| v. ) | |
| ) | |
| STATE OF ALASKA, DEPARTMENT ) | MEMORANDUM OPINION |
| OF HEALTH & SOCIAL SERVICES, ) | AND JUDGMENT* |
| OFFICE OF CHILDREN'S SERVICES, ) | |
| ) | No. 1539 – May 13, 2015 |
| Appellee. ) | |
| ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Kari Kristiansen, Judge.

Appearances: Hanley Robinson, Anchorage, for Appellant. Ruth Botstein, Assistant Attorney General, Anchorage, and Craig W. Richards, Attorney General, Juneau, for Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

1.     A father appeals the trial court's termination of his parental rights to two children, challenging all four predicate findings for such a termination:

---

\*     Entered under Alaska Appellate Rule 214. The name used in the caption is a pseudonym.

A.	Before terminating parental rights the trial court must find by clear and convincing evidence that the child is in need of aid under AS 47.10.011.[1]	Here the trial court found that the children were children in need of aid as defined by AS 47.10.011(1) (abandonment)[2] and (7) (sexual abuse).[3] Where the record supports one ground for finding a child to be in need of aid, it is unnecessary to consider the trial court's other findings.[4]	We address only the trial court's findings under AS 47.10.011(7).

The trial court found that the children were at risk of further sexual abuse if returned to their father because the father had not addressed allegations that his daughter had been sexually molested by his own father, the children's grandfather, and the father continued to allow the grandfather to live with him without recognizing the risk of harm to the children.  The court stated:

> [H]aving considered the testimony of [the daughter], the
> court now finds that she was sexually abused by her paternal

---

[1]	AS 47.10.088(a)(1).

[2]	The trial court may find a child to be in need of aid if "a parent or guardian has abandoned the child as described in AS 47.10.013, and the other parent is absent or has committed conduct or created conditions that cause the child to be a child in need of aid under this chapter."  AS 47.10.011(1).

[3]	The trial court may find the child to be a child in need of aid if "the child has suffered sexual abuse, or there is a substantial risk that the child will suffer sexual abuse, as a result of conduct by or conditions created by the child's parent . . . or by the failure of the parent . . . to adequately supervise the child . . . ."  AS 47.10.011(7).

[4]	*See*, *e.g.*, *Sherman B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 290 P.3d 421, 431 (Alaska 2012) ("Because we affirm the superior court's finding of abandonment, we do not reach the State's alternative argument for termination based on neglect."); *Lucy J. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 244 P.3d 1099, 1112 (Alaska 2010) (declining to decide issues of alternative grounds for termination when one ground was dispositive).

grandfather, the same individual that resides with [the father] today. [The father] does not accept the fact and denies knowing about the allegations until last year, despite repeated written references to the events in prior court pleadings. [The father's] home is not suitable for his children so long as [the grandfather] resides with him and [the father] fails to recognize the risk of harm. (Footnote omitted.)

The father argues that the Office of Children's Services (OCS) failed to prove that the children would be at risk of sexual abuse if returned to him. OCS cites testimony that the father did not believe his daughter's allegations and that despite his repeated assurances that the grandfather would be leaving the home imminently, it never happened.

B.     Before terminating parental rights the trial court must find by clear and convincing evidence that the parent "has failed, within a reasonable time, to remedy the conduct or conditions in the home that place the child in substantial risk so that returning the child to the parent would place the child at substantial risk of physical or mental injury."[5] In making this determination the court may consider any fact relating to the child's best interests, including but not limited to:

(1)     the likelihood of returning the child to the parent within a reasonable time based on the child's age or needs;

(2)     the amount of effort by the parent to remedy the conduct or the conditions in the home;

(3)     the harm caused to the child;

(4)     the likelihood that the harmful conduct will continue; and

---

[5]     AS 47.10.088(a)(2)(B).

(5) the history of conduct by or conditions created by the parent.[6]

Here the trial court found that: (1) the father does not accept the fact that his daughter was sexually abused by the grandfather; and (2) that the father "denies knowing about the allegation until last year, despite repeated written references to the events in prior court pleadings." The court further found that the father's "home is not suitable for his children so long as [the grandfather] resides with him and [the father] fails to recognize the risk of harm."

The father argues that he remedied what minimal harmful child protection issues he caused because he is willing to provide full-time care in his home with his assurances that the grandfather will not be there. OCS responds that the father has not remedied his conduct or the conditions at home because he has not developed an understanding of either "the importance of believing, supporting, and protecting [his daughter] as a sexual abuse victim" or the risk to his children from the grandfather's presence.

C. Before terminating parental rights the trial court must find by clear and convincing evidence that OCS made timely, reasonable efforts to provide family support services designed to prevent out-of-home placement or enable the child's safe return to the family home.[7] OCS's statutory duties include: (1) identifying family support services that will assist in remedying the parent's conduct; (2) actively offering and referring the parent to those services; and (3) documenting its actions.[8] OCS fulfills this requirement by "setting out the types of services that a parent should [employ] in a

---

[6] AS 47.10.088(b).

[7] AS 47.10.088(a)(3); AS 47.10.086(a).

[8] AS 47.10.086(a).

manner that allows the parent to utilize the services."[9]  Reunification efforts do not need to be perfect but must be reasonable under the circumstances, depending on the parent's substance abuse history, willingness to participate in treatment,[10] the history of services provided by OCS,[11] and the parent's level of cooperation.[12]  The reasonableness of OCS's efforts may also depend on the parent's expressed interest in parenting, with OCS's responsibility lessening as the parent's interest wanes.[13]  "In reviewing whether OCS made reasonable efforts, a court considers [OCS's] reunification efforts in their entirety.  The court must first identify the problem that caused the children to be in need of aid and then determine whether OCS's efforts were reasonable in light of the surrounding circumstances."[14]

---

[9]      *Audrey H. v. State, Office of Children's Servs.*, 188 P.3d 668, 679 (Alaska 2008) (quoting *Frank E. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 77 P.3d 715, 720 (Alaska 2003)) (internal quotation marks omitted).

[10]      *Amy M. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 320 P.3d 253, 259 (Alaska 2013).

[11]      *Audrey H.*, 188 P.3d at 679 n.35 ("[T]he determination of whether OCS made reasonable efforts may involve consideration of all interactions between the parent and OCS."); *Erica A. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 66 P.3d 1, 7 (Alaska 2003) ("[T]he reasonableness of the division's efforts . . . must be viewed in light of the entire history of services . . . .").

[12]      *Sherman B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 310 P.3d 943, 953 (Alaska 2013).

[13]      *Audrey H.*, 188 P.3d at 679.

[14]      *Barbara P. v. State, Dep't of Health & Soc. Servs.,* 234 P.3d 1245, 1262 (Alaska 2010) (footnotes omitted) (holding trial court did not clearly err in finding OCS's reunification efforts were reasonable, despite failure to provide visitation in prison, in light of OCS's reunification efforts in their entirety); *Audrey H.*, 188 P.3d at 679-81 (holding that although OCS's efforts were limited at times, this did not render its

(continued...)

Here the trial court found that OCS provided the following family services designed to enable the safe return of the children and found insufficient the father's argument that the services were inadequate:

> a. written case plans and phone contact plans, b. financial support and referrals for [the mother] when she temporarily moved to Alaska, c. individual therapy for both children and therapeutic foster homes when necessary, d. wrap around services for [the son], e. home visits and team meetings. [The father] now argues that the services were inadequate because [OCS] failed to fly him to Alaska and work with the children's therapist to develop family therapy. There does not appear to be any reason why he could not have attempted the same by calling the therapist. Further, [the father's] failure to comply with the [Interstate Compact for the Placement of Children (ICPC)] process is a complete barrier to reunification.

The court found not credible the father's argument that he did not have the financial resources to comply with the ICPC process.

The father argues that OCS failed to provide reasonable efforts toward reunification because neither social worker assigned to the case identified or actively offered him any support services to accomplish the tasks in his original case plan, and that OCS unfairly provided extensive efforts and services to the children's mother. The father also argues that his lack of contact with OCS should be excused because there were few reasons to keep in contact; he was not allowed to speak to his children or to participate in family therapy with them, and he was not given an opportunity to visit them in Alaska. OCS responds that its involvement with this family has been extensive and that the father failed to engage in the services he was offered, failed to comply with

---

[14]     (...continued)
efforts unreasonable when considered in context of history with parent).

his case plans, and failed to return telephone calls or otherwise maintain contact with OCS.

D. Before terminating parental rights the trial court must find, by a preponderance of the evidence, that termination is in the child's best interests.[15] The trial court may consider the statutory factors listed in AS 47.10.088(b)[16] to determine whether termination of parental rights is in the child's best interests, as well as any other facts relating to the child's best interests.[17] The trial court is not required to consider or give particular weight to any specific factor, including a parent's love for the child or desire

---

[15]    CINA Rule 18(c)(3); AS 47.10.088(c).

[16]    The statute provides:

In making a determination under (a)(2) of this section, the court may consider any fact relating to the best interests of the child, including

(1)    the likelihood of returning the child to the parent within a reasonable time based on the child's age or needs;

(2)    the amount of effort by the parent to remedy the conduct or the conditions in the home;

(3)    the harm caused to the child;

(4)    the likelihood that the harmful conduct will continue; and

(5)    the history of conduct by or conditions created by the parent.

[17]    *Chloe W. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 336 P.3d 1258, 1271 (Alaska 2014).

to parent[18] and may consider factors such as the child's bond with foster parents, the child's need for permanency, and the parent's lack of progress.[19]

Here the trial court found that the children needed permanency, that the likelihood of returning the children to their father's care in a reasonable time period based on their needs was extremely low, and that it was not in their best interests to wait for their father to re-engage with the ICPC process and re-establish a relationship with them. The father argues that termination was not in the children's best interests because he never had a meaningful opportunity for or assistance with fostering the parent-child relationship through in-person visitation. OCS responds that the children's need for permanency, particularly because of their special needs, made it important for them to proceed with adoption by the paternal relatives who have cared for them since June 2011.

2. We have reviewed the record and carefully considered the father's arguments on appeal. After applying the applicable standards of review,[20] we conclude

---

[18]    *Id.*

[19]    *Id.*; *see also Barbara P.*, 234 P.3d at 1263-64 (upholding finding that termination was in children's best interests based on stability in their foster home, their need for permanency, and fact that neither biological parent would be ready to care for children on a full-time basis within a reasonable period of time).

[20]    In a CINA termination proceeding, we review a superior court's factual findings for clear error. *Christina J. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 254 P.3d 1095, 1103 (Alaska 2011) (citing *Maisy W. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 175 P.3d 1263, 1267 (Alaska 2008)). Factual "[f]indings are clearly erroneous if review of the entire record leaves us with 'a definite and firm conviction that a mistake has been made.'" *Sherman B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 290 P.3d 421, 427-28 (Alaska 2012) (quoting *Barbara P.*, 234 P.3d at 1253). "Whether a child is in need of aid and whether the parent failed to remedy the 'conduct or the conditions that placed the
(continued...)

that the evidence supports the superior court's findings and that the superior court correctly applied relevant law.

    3.  We therefore AFFIRM the superior court's termination of parental rights in this case.

---

**20**  (...continued)

child at substantial risk' of harm are factual findings reviewed for clear error." *Id.* at 428 (quoting *Pravat P. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 249 P.3d 264, 270 (Alaska 2011)). Best interests findings also are factual findings reviewed for clear error. *Id.* (citing *Christina J.*, 254 P.3d at 1104). Whether OCS made reasonable efforts to reunify the family is a mixed question of law and fact, and we review questions of law de novo. *Id.*